## LOVELACE, Appellant, v. PRATT et al.

### Division Two, May 21, 1901.

Building and Loan Association: ASSIGNMENT OF BONDS AND DEED OF TRUST. A building and loan association, organized under the laws of this State, has no power, while a going concern, to assign the bond and deed of trust given it by a member to secure a loan. And having no such power, such assignment gave to the assignee no power to have the deed of trust foreclosed by the sheriff acting as trustee for failure to pay dues, premiums or interest or other default. And a foreclosure at his request and the trustee's deed carried no title to the purchaser. Especially is this the case where the deed of trust on its face provides that in case of default in the payment of the installments, the sale may be made at the request of the association.

Appeal from Jasper Circuit Court.—*Hon. J. D. Perkins,* Judge.

AFFIRMED.

*Davis & Steele* for appellant.

The question to be determined in the case is this: Has a building and loan association, organized under the laws of this State, the power to sell and assign its notes or bonds executed by members for loans? A building and loan association, within limitations, has power to sell and assign its notes and bonds. 4 Am. and Eng. Ency. of Law (2 Ed.), p. 1018. A fund company (which was under the statute of 1865 very similar to a building and loan association) had the power to sell

and assign its bonds and notes. Detweiler v. Breckenkamp, 83 Mo. 45; Wilson v. Schoenlaub, 99 Mo. 96. It has been held that a note given to a building and loan association by a member may be sold and assigned, subject to all of the rights of the member under the statute. Sappington v. Loan Co., 76 Mo. App. 242.

*A. W. Lyon* for respondents.

To assign the bond of a borrowing member, and thus require the said member to do business with a stranger, is at variance with the fundamental principle of a building and loan association. The association is bound to receive and invest the payments made by a member, both as dues and as, or in lieu of, interest, in the same manner as those of other members, and as part of a common fund, and upon winding up the concern it is required to account to him for such proportion of the whole accumulation as may be coming to his share, retaining his proportionate share of the losses and expenses and applying the balance to the liquidation of his debt. Endlich on Building Associations (2 Ed.), secs. 125, 129, 339.

BURGESS, J.—This is ejectment for the possession of lots fourteen, fifteen and sixteen, in block four, in Grand View Place, an addition to the town of Monett, in Barry county, Missouri. The petition is in the usual form in such cases. The answer, leaving off the formal parts, is as follows:

"Comes now the defendant herein and for his second amended answer, says that he denies each and every allegation contained in plaintiff's petition, except that he is in possession of the premises described in plaintiff's petition and that his possession is lawful.

"Further answering, defendant says that plaintiff's pre-

tended title is based upon and derived solely from a trustee's deed, executed by the sheriff of Barry county, Missouri, purporting to have acted as trustee in a certain deed of trust which was executed by defendant to W. F. Houser, as trustee, for the National Loan & Investment Association, of Springfield, Missouri, beneficiary in said deed of trust. Defendant states that said trustee's deed is void and passed no title to said premises for the reason that the said National Loan & Investment Association is and was at all the times herein referred to a corporation organized and incorporated as a mutual saving fund, loan and building association as designated and described by the statutes of this State, or what is commonly called a building and loan association, said association having no other powers than those given it by the statute creating said associations and defining their powers. That defendant became a borrowing member and stockholder in said association and as such member executed a bond to said association in the sum of $ . . . . and the deed of trust aforesaid conveying said premises as aforesaid, securing the payment of said bond. That said bond was to be paid in monthly installments according to the regular and usual plan adopted and practiced by said association. Defendant says that without his knowledge or consent the said association did unlawfully attempt to sell, transfer and assign his said bond and deed of trust to one B. A. Jefferson, and after said attempted and unlawful assignment aforesaid, the said Jefferson did unlawfully attempt and order a foreclosure of said deed of trust, and at said pretended foreclosure sale plaintiff became purchaser of said premises for the grossly inadequate sum of ten dollars, and said sheriff executed to plaintiff a deed attempting to convey to him said premises, on which deed plaintiff relies solely for his title to said premises. Defendant says that plaintiff obtained no title to said premises by virtue of said pretended foreclosure and said pre-

tended trustee's deed for the reason that said association had no power or right to sell or transfer the title to said bond and deed of trust; that said Jefferson never obtained any title or ownership to said bond and deed of trust, and had no right to order a foreclosure of said deed of trust, and the said Jefferson had no rights touching the premises.

"Further answering, defendant says that at the time of said pretended foreclosure, none of the conditions set out in said instrument had happened which authorized a foreclosure of the same; that before the advertisement was begun in said pretended foreclosure defendant tendered said association all installments and fines due on said bond and the same was refused by said association, and it was on account of the alleged non-payment of said fines and installments tendered as aforesaid that the pretended foreclosure was made."

The facts are about as follows:

October 8, 1892, defendants executed and delivered to the National Loan & Investment Association of Springfield, Missouri, a deed of trust, conveying lots 15 and 16, described in plaintiff's petition, to secure the payment of a bond therein described for $225.

May 26, 1893, defendants executed another deed of trust to the said National Loan & Investment Association, conveying lots 14 and 15, described in plaintiff's petition, to secure the payment of a bond therein described.

August 30, 1895, the National Loan & Investment Association assigned the bonds secured by the deeds of trusts to B. A. Jefferson; and after plaintiff claims that defendants had made default in the payment of monthly dues, premiums, interest and installments, as was provided in the bonds and deeds of trust, and after the trustee had refused to act, the holder of the bonds requested the sheriff of Barry county to sell the property as was provided in the deed of trust. In pursuance

of said request the sheriff did sell the property, and J. I. Lovelace, plaintiff in this case, became the purchaser for the price and sums of $150 and $26.

The bonds described in the deed of trust provide that "the payment of the principal sum and interest thereupon, and the said monthly premium, as well as any monthly dues or fines on said one share of stock then due, and the payment of such advances made by the association, may be enforced and recovered at once, either by sale of any property under said deed of trust given to secure this bond, or otherwise by taking deeds of conveyance, or assignment, or by any other legal or equitable proceedings."

The evidence showed that after the assignment of the bonds, but before Pratt had notice of it, he tendered to L. W. Badger, the collecting agent of the National Loan & Investment Association, at Monett, Missouri, all premiums, dues, and fines due by him to said association on account of said lands or stock owned by him therein, which was refused.

Plaintiff asked the court sitting as a jury to declare the law to be as follows:

"1.   The court declares the law to be that under the pleadings and evidence adduced in this case the findings and verdict must be for the plaintiff.

"2.   The court declares the law to be that the Loan & Investment Association had the power to sell and assign the bond and deeds of trust to Jefferson, and he had the right as such assignee, after default of the conditions of the deeds of trust, to request the sheriff to foreclose the said deed of trust; and the plaintiff, being the purchaser at the foreclosure sales, as is evidenced by the trustee's deeds read in evidence, acquired all the right and title of defendants in and to the real estate described in the deeds of trust, and the finding should be for the plaintiff.

Lovelace v. Pratt.

"3.   The court instructs the court, sitting as a jury, if it shall find from the evidence that defendant made default in the payment of monthly dues, premiums, installments or interest according to the conditions of the bonds and deeds of trust for a period of six months, then the Loan & Investment Association had the power to sell and assign the bonds and deeds of trust to Jefferson, and he had the right as such assignee to request the sheriff to foreclose the deeds of trust; and the plaintiff, being the purchaser at the foreclosure sales, as is evidenced by the trustee's deeds read in evidence, acquired all the right and title of defendant in and to the real estate described in the deeds of trust, and the findings should be for the plaintiff."

The court refused to declare the law as asked by plaintiff and he duly excepted.

No declarations of law were asked by defendant, and none were given by the court of its own motion.

There was judgment for defendants, from which plaintiff appeals.

One of the points presented by this record is with respect to the authority of a building and loan association organized under the laws of this State, while a going concern, to sell and assign its notes or bonds executed by borrowing members for loans.   The National Loan & Investment Association was organized under the general laws of this State, authorizing the organization of such association.

There are many descriptions of such an association, but none more comprehensive, we think, than that given in the case of the State of Minnesota v. Redwood Falls Building & Loan Association, 45 Minn. 154, which is as follows:   "The general design of such an association may be stated, with sufficient precision for our present purposes, to be the accumulation from fixed periodical contributions of its shareholders or members, and from the profits derived from the investment of the

same, of a fund to be applied from time to time in accommodating such shareholders with loans, to enable them to acquire and improve real estate by building thereon; the conditions of the loan being such that the liability incurred therefor may be gradually extinguished by means of the borrower's periodical contributions upon his stock, so that when the latter shall be fully paid up the amount paid shall be sufficient to cancel the indebtedness."

Prior to the Act of 1895 (Laws of 1895, p. 105), mutual savings fund, loan and building associations had no power to borrow money to loan its members or others, because no such power was conferred upon them by their charters, or necessarily implied, from the powers expressly granted (Grohmann v. Brown, 68 Mo. App. 630), and if no such power was conferred or implied with respect to the authority to borrow money, they possessed no power either by express statute or by implication to engage in a banking or discount business.

The answer expressly alleges that "said association did unlawfully attempt to sell, transfer and assign his said bond and deed of trust to one B. A. Jefferson," who ordered a foreclosure thereof, etc., and this is not denied by plaintiff. That this transaction by the association was a palpable abuse of the powers conferred upon it by its charter by which it was constituted a body corporate, is too apparent from the charter itself to admit of discussion. The object and purposes of such an organization is utterly inconsistent with the idea that any part of its purpose is to engage in the sale of the notes of its borrowers. When a corporation attempts to use powers which it does not possess, as in this case to sell outright and assign the bonds of one of its stockholders, contrary to the plain intent and policy of the law, its action is *ipso facto* null and void. The sale, therefore, by the acting trustee at the request of Jefferson was without authority and passed no title; especially is

this so, when the deeds of trust upon their face provide that in case of default in the payments by Pratt of the installments as they become due, the sale may be made at the request of the *association.*

The judgment is affirmed. *Sherwood, P. J.,* and *Gantt, J.,* concur.