CEMETERY GARDENS, INC., Plaintiff, *v.* HARRY BLUEWEISS, Defendant.

Municipal Court of New York, Borough of Manhattan, First District, June 30, 1931.

*Gustave Menit,* for the plaintiff.

*William H. Walden,* for the defendant.

DAVID C. LEWIS, J.   Upon the theory that the defendant without first procuring a license acted as a real estate broker in the sale of land owned by the plaintiff and for which services the plaintiff paid him a commission, this plaintiff now seeks to recover a penalty of $1,000 pursuant to subdivision 3 of section 442-e of the Real Property Law.

With strict obeisance to the language used in defining a real estate broker, and relying solely upon the wording of this provision, the plaintiff asserts that the defendant, in securing purchasers of burial plots in the plaintiff's cemetery, was selling an estate or interest in real estate and, therefore, acting as a real estate broker.

To this contention I cannot subscribe.

The plaintiff is a cemetery corporation organized under the Membership Corporations Law.   The very essence of its business is the disposition of burial plots in the cemetery lands owned by it. Without the disposition of these plots, it could not carry out its corporate object.   A corporate entity, it can only act through agents.   Hence, in selling burial plots through its agent, it cannot be gainsaid that it was doing a real estate brokerage business or exercising the privileges of a real estate broker, as that term is ordinarily understood in the real estate world.

The plaintiff concedes that if the disposition of these burial plots were had through the president of the corporation, the transaction would be immune from the objection now raised.

I know of no provision of law where it is written that a corporation can only act through its president and not through any other duly authorized agent.   Hence in this instance I cannot conceive of any legal foundation for the distinction between the acts of an officer of the corporation and the more limited or restricted acts of a salesman or solicitor.   So far as the conduct is within the scope of authority of the agent performing the duties of his principal, there is no sound reason to distinguish one from the other.

It appears that the defendant did not hold himself out as a broker, nor was he retained by the plaintiff as a broker.   To the contrary,

evidently the plaintiff hired the defendant as a solicitor and salesman to do its work and not to serve any other master. The relationship thus created was one of master and servant, employer and employee. The fact that the compensation of the servant was to be computed on a commission basis is not all-sufficient to convert the actual relationship into something different than that existing in law and in fact.

Nor can a due regard for the spirit or intent of the statute require or justify such a far-fetched and foreign interpretation. The law was intended, undoubtedly, to protect the public against the acts and conduct of the so-called broker.

" The real estate broker is brought by his calling into a relation of trust and confidence. Constant are the opportunities by concealment and collusion to extract illicit gains." (*Roman* v. *Lobe*, 243 N. Y. 51.)

The law was never intended to deprive a cemetery corporation from employing its own servants, clerks or wage-earners to carry out the objects of its corporation, nor to deprive those wage-earners of their just compensation for labors duly performed.

The plaintiff knew at the time of employing the defendant that the defendant was not a duly licensed real estate broker.

If the plaintiff has enjoyed the fruits of the defendant's labor, the fact that the defendant was not a duly authorized real estate broker cannot constitute sufficient grounds to deprive him of his rights, nor to make him subject to the penalty which the plaintiff now seeks.

It seems to me that in performing his duties as a solicitor of purchasers for burial plots in the plaintiff's cemetery, the defendant was not engaged in the sale of real estate within the purview of section 440 of the Real Property Law (as amd. by Laws of 1927, chap. 107).

Burial lands are endowed by the statute with certain immunities and are also subjected to certain restrictions peculiar to them. Only in a restricted sense can it be said that the ownership of a burial plot constitutes an interest in real property. (Real Prop. Law, § 240; Memb. Corp. Law, § 84, as amd. by Laws of 1926, chap. 722; 11 C. J. 57.)

And a cemetery corporation finds its ownership freighted with certain obligations and restrictions peculiar to cemetery lands. The very cases cited by the plaintiff sustain this interpretation: " the owners, other than the appellant here indicated, are the persons to whom respectively, subdivisions of the whole tract of the appellant's land have been by it conveyed, to be held and used by them for burial purposes. The effect of such conveyance,

under the statute from which the plaintiff derives its powers, is we suppose (for no copy of any conveyance is laid before us) no more than to confer upon the holder of a lot a right to use for the purpose of interments. No such estate is granted as makes him an owner in such sense as to exclude the general proprietorship of the association." (*Buffalo City Cemetery* v. *City of Buffalo*, 46 N. Y. 503, at p. 505.) (See, also, *George* v. *Cypress Hills Cemetery*, 32 App. Div. 281.)

Whatever characteristics or attributes of an interest in real estate may have been involved in the rendition of the services alleged to have been performed by this defendant, they are not sufficient to bring the transaction within the quoted sections of the Real Property Law.

" We do not think this provision broad enough to cover, or was intended to cover, every transaction in which an interest in real estate may be part of the subject of transfer." (*Weingast* v. *Rialto Pastry Shop, Inc.*, 243 N. Y. 113, at p. 116.)

I find nothing in any of the cases submitted inviting a different construction of the legal situation presented.

Upon the facts submitted to me it appears that the prior judgment is not *res adjudicata* as to the defendant. In passing upon that question, one is not necessarily confined to the pleading.

Motion to open the default granted upon payment of ten dollars costs, with ten dollars additional costs to the plaintiff to abide the event. Case set down for September 25, 1931.