## FARM & HOME SAVINGS & LOAN ASS'N OF MISSOURI v. NEE.

### No. 4195.

United States District Court
W. D. Missouri, W. D.

Dec. 15, 1948.

Gilbert H. Carter (of Ewing & Ewing) and Ewing & Ewing, all of Nevada, Mo., for plaintiff.

Sam M. Wear, U. S. Atty., Sam O. Hargus, Asst. U. S. Atty., both of Kansas City, Mo., and Philip R. Miller, Sp. Asst. to Atty. Gen. of the United States, for defendant.

REEVES, Chief Judge.

This is an action by plaintiff for a refund of certain taxes exacted by the defendant as alleged employment taxes. They

were unemployment and insurance contributions as claimed by the defendant for the years 1941 and 1942 together with interest and insurance contribution for the first half of the year 1943. Employment taxes are provided for under specified subparagraphs of Sections 1426 and 1607, Title 26 Internal Revenue Code, 26 U.S.C.A. §§ 1426, 1607.

The plaintiff has an agency in the City of St. Louis. This agency is engaged for the most part in selling shares or stock certificates of the plaintiff. In addition to this, it does a small amount of servicing the investments of plaintiff. The St. Louis agency has many office employees and in addition thereto has a large number of soliciting agents. At the time the taxes were claimed to have accrued the St. Louis agency was compensated for its services almost wholly by commissions on business done, but some contributions were directly made toward the payment of office rentals, etc. The agency operated under three separate successive contracts. One made on November 1, 1935, which was superceded by one dated May 31, 1940, and the third contract dated December 31, 1940 superceded the second. These contracts were made with certain individuals who were referred to in the contract as agent, and the contract of November 1, 1935, was more extensive, so far as the agency authority was concerned, than the later contracts. In the earlier, or first contract, the agent was "permitted to make loans, sell, manage and rent real estate, collect moneys owing to the Association and sell stock for the Association in such territory." The subsequent contracts provided that:

"The agent shall be permitted to sell and solicit persons in such territory to purchase stock, shares, certificates and securities, all hereinafter referred to as securities issued by the Association and to collect monies paid by or for such persons upon securities so sold."

The plaintiff reserved the right to appoint other agents. The agent was required to make daily reports and to make remittance of all payments or collections received by it. The compensation to the agent or agents was made by remittance direct from the home office. There was a special provision in each of the contracts that:

"The agent assumes full responsibility, legal or otherwise, for the acts or omissions of any sub-agents reporting to the agent."

The lettering on the office door as well as all literature bore the name only of the plaintiff. All advertising matter was in the name of plaintiff and the sub-agents received instructions from the plaintiff. All solicitations were made in the name of plaintiff. In fact, all business with respect to the agency was transacted in the name of the plaintiff and the agency was the alter ego of the plaintiff. Cobe v. Lovan, 193 Mo. 235, 92 S.W. 93, 4 L.R.A.,N.S., 439, 112 Am.St.Rep. 480. In addition there was a degree of supervision over the agency at St. Louis by the plaintiff through its officers. Regular visitations were made by such officers.

The agent or agents at St. Louis, as a medium for the transaction of business, incorporated a company known as the St. Louis Securities Company. It performed no other function than the nominal one of being the medium for the transaction of local business. It, too, was the alter ego of the St. Louis agency.

Upon the theory that the employees of the St. Louis agency, including the salesmen, were employees of the plaintiff, the defendant required the payment of the tax mentioned. The payment was made by the plaintiff under protest and it now seeks to recover the amount thus paid, with interest. The principal amount paid was $1039.82. On July 27, 1943 the plaintiff filed its claim or claims for refund of the taxes or contributions thus wrongfully exacted, as it claims.

The sole question for determination is whether the office force and sub-agents of the St. Louis agency were in fact employees of the plaintiff.

1. In September, 1939, the owners of the St. Louis agency took the position that,

"The said St. Louis Securities Company is the corporate agent for the Farm and Home Savings and Loan Association of Missouri and the said Association has no other general agency in St. Louis, Missouri.

"The said St. Louis Securities Company was organized for the sole purpose of acting as corporate agent for said association and engages in no other form of business or activities.

"That, in view of the foregoing statements, the St. Louis Agency of the Farm and Home Savings and Loan Association of Missouri and the St. Louis Securities Company are the same entity."

This statement was made in the form of an affidavit, and was signed, among others, by Newell T. Paterson, now an executive officer of plaintiff.

■ On April 4, 1940, the plaintiff advised the Commissioner of Internal Revenue that while payments were made to the St. Louis Securities Company, yet: "Such company, so we understand, immediately disbursed the amount so received by it from the undersigned Association to Messrs. Paterson, Hellmuth and Steele and to the various other persons who had performed services for the undersigned Association in the St. Louis area." Then later closed with this significant paragraph:

"There was at all times a clear oral understanding that the St. Louis Securities Company, as the fiscal agent of or the operating medium for Messrs. Paterson, Hellmuth and Steele in the St. Louis area, would not do anything contrary to or inconsistent with the things and actions required or prohibited by the written agreement between Messrs. Paterson, Hellmuth and Steele and this Association, and that it, the said St. Louis Securities Company, would be operated by Messrs. Paterson, Hellmuth and Steele only as their fiscal agent or medium in the transaction of the business of representing the undersigned Association as agent in the St. Louis area."

When the Commissioner of Internal Revenue sought to impose an employment tax upon the St. Louis Securities Company it took the position that the office force and the underwriting agency in St. Louis were employees of the plaintiff. Apparently the plaintiff acquiesced and approved that attitude on the part of the St. Louis Securities Company, its agent at St. Louis. Under such circumstances it can-not very well be heard to say now that such persons were not at the time its employees.

2. The plaintiff operates only in the States of Missouri and Texas. It has at the present time several so-called branch offices in different cities of these two states. Naturally the office employees, as well as the soliciting agents at its branch offices, are paid directly by the plaintiff. The St. Louis agency operated in the same way as a branch office. The agency there, however, no longer makes investments for the plaintiff but, to a small degree, it services investments. The chief purpose of the St. Louis agency is to sell shares or certificates, being the securities of the plaintiff. The agent there is characterized as manager for the plaintiff. And the difference between its branch offices and the St. Louis office consists largely of the fact that the St. Louis office is in a way self-sustaining, that is to say, for the most part it supports itself by commissions, which commissions are paid to it directly by the plaintiff. This means that the soliciting agents and the office personnel in the St. Louis agency perform practically an identical function with the other branch offices.

It would not be permissible for the plaintiff to contract in such way as to undertake to relieve itself of liability for these taxes. The reverse was undertaken in the case of Bartels v. Birmingham, 332 U.S. 126, 67 S.Ct. 1547, 1550, 91 L.Ed. 1947, 172 A.L.R. 317. There, the court denied the right by "contractual arrangements * * *" to shift the burden of the Social Security Tax "from the band leaders to the [dance hall] operators." Contrary to the specified terms of the contract, the court said that the members of the band were employees of the band leaders and not employees of the dance hall operators.

The case of United States v. Silk, 331 U.S. 704, 67 S.Ct. 1463, 1467, 91 L.Ed. 1757, cited by plaintiff bears a strong similarity to this case but it sustains the defendant rather than the plaintiff. The men, whose duty it was to unload coal cars, furnished their own tools, worked when they wished, and worked for others at will; nevertheless the court said that they were employees within the purview of the Social Security

legislation. The court said that, " * * * a constricted interpretation of the phrasing by the courts would not comport with its purpose." Referring to the Social Security Law, 42 U.S.C.A. § 1001 et seq.

The court further said that the word "employee" was not used in this legislation as a word of art, "and its content in its context was a federal problem to be construed 'in the light of the mischief to be corrected and the end to be attained.'" This commentary was made with respect to employees in labor disputes. At page 715 of 331 U.S., at page 1469 of 67 S.Ct., 91 L.Ed. 1757, the court significantly said:

"Contracts, however 'skilfully devised,' Lucas v. Earl, 281 U.S. 111, 115, 50 S.Ct. 241, 74 L.Ed. 731, should not be permitted to shift tax liability as definitely fixed by the statutes."

This case was cited by plaintiff for the reason that the court held that the truck drivers, whose business it was to deliver the coal, were in fact independent contractors. Note the comment of the court:

"These driver-owners are small businessmen. They own their own trucks. They hire their own helpers. In one instance they haul for a single business, in the other for any customer."

The office force of the St. Louis agency and the soliciting agents in no way comport with driver-owners of the trucks mentioned in United States v. Silk, supra.

30 C.J.S., page 226 defines "employee" as follows:

" 'Employee' has neither technically nor in general use a restricted meaning by which any particular employment or service is indicated, *and that it may have different meanings in different connections admits of no doubt.* (Italics mine.) It is not a word of art, *but it takes color from its surroundings and frequently is carefully defined by the statute where it appears.* (Italics mine.) The context and the connection in which it is used must largely determine whether in a particular case the term includes a certain person, * * *."

In Fidelity & Deposit Co. of Maryland v. Friedlander, 6 Cir., 101 F.2d 106, loc. cit. 108, the term "employee" was said to have different shades of meaning in different relationships, and that, " 'The word "employe" properly describes any one who renders labor or service to another * * *.' "

In New York it was held that a salesman hired by a cemetery corporation to sell burial lots on commission was an employee and not a real estate broker within the licensing law. Cemetery Gardens v. Blueweiss, 140 Misc. 608, 251 N.Y.S. 546, loc. cit. 547.

Again, in Pennsylvania, it was held that the fact a salesman who worked on a commission basis, also sold small amounts of goods for others, did not prevent his being an employee of the principal employer. Beaver v. George W. Boyd Co., 106 Pa.Super. 24, 161 A. 900, 902.

In Minnesota, a salesman who was assigned to specific territory and instructed to call on certain customers, and was paid stated commission on products sold, and was furnished pads of invoices bearing the employer's name was an employee within the protection of the Workmen's Compensation Act. Olson v. Eck's Homemade Sausage Co., 194 Minn. 458, 261 N.W. 3.

In view of the foregoing it must be held that the office personnel of the St. Louis agency, together with its soliciting agents, were employees of the plaintiff within the purview of the employment tax and that the defendant (collector) properly exacted the tax, and that the plaintiff is not entitled to recover.