Trustees of Mutual Loan Association vs. James H. Tyre, who hath survived Sarah E. Tyre, his wife and terre tenants.

1. Building and Loan Associations—Foreclosure—Nonsuit.

A nonsuit will not be granted for failure of plaintiff to show that defendant, in an action by a building association to foreclose a mortgage, was a member of the association.

2. Abatement and Revival—Dismissal and Nonsuit—Plea in Abatement—Necessity.

That plaintiff insolvent loan association had no authority to sue, because the time within which it was authorized by the court to sue had expired, was not ground for a motion for a nonsuit, being matter for plea in abatement.

3. Building and Loan Associations—Stockholders—Relations.

The contracts of subscription of stockholders in a building and loan association have the same force as those of stockholders in other corporations.

4. Building and Loan Associations—Stockholders—Nature of Relation with Association.

A stockholder in a building association, by borrowing money, does not alter his relation as stockholder, except that his right to receive profits on the stock is transferred to the association to secure the loan, so that he becomes a debtor of the association; it agreeing to invest the dues and interest it receives from him so that his stock will finally be fully paid, when it must be applied to payment of the loan to him.

**26 Del.]    Trustees of Mutual Loan Ass'n vs. Tyre.    89**

Syllabus.

5. Building and Loan Associations—Insolvency—Effect on Contracts.

Insolvency of a building and loan association relieves a stockholder from payment of dues and determines loan contracts; the only thing left to be done being to wind up its affairs, so as to do equity to creditors, debtors, and stockholders.

6. Building and Loan Associations—Insolvency—Rights of Borrowers.

Upon winding up the affairs of an insolvent loan association, a borrower should be charged with the amount of his loan, with legal interest, but should be credited with sums paid as interest on the mortgage according to the rule of partial payments, with the amount of the premium, and any other sums paid on account of the loan, excluding all dues, fines, or payments on account of the stock.

7. Building and Loan Associations—Borrower—Nature of Relation.

A shareholder in a loan association retains his character as shareholder after he becomes a borrower, though his stock be assigned to the association as collateral for the loan.

8. Building and Loan Associations—Mortgage—Debts Secured—Payment of Dues.

A mortgage given to a loan association by a stockholder secures payment of dues upon the stock as well as the debt created by the loan.

9. Building and Loan Associations—Stock Payments—Operation—Payment on Mortgage Debt.

Payments on stock by a borrower from a building association are not *ipso facto* payments on the mortgage debt *pro tanto*, even if the stock is assigned as collateral.

10. Payment—Collateral Securities.

As a rule payments on account of collateral securities are not payments on account of the debt they secure.

11. Mortgages—Assignment After Maturity.

An assignee of a mortgage under an assignment made after maturity of the secured note took it subject to all equities.

12. Building and Loan Associations—Assignment of Mortgage—Rights of Assignee.

A building and loan association, which accepted the assignment of a mortgage executed to another association to secure a loan, upon the merger of the latter association with it, assumed by the merger the stock undertaking of the assignor; and upon its insolvency, preventing it from carrying out its contract, it cannot claim any rights which the assignor association could not claim, and hence cannot claim payment of the premium from the mortgagor.

13. Mortgages—Enforcement—Amount.

A mortgagor can only be charged with the amount actually received under the mortgage, though it was given for a greater sum.

(*April* 18, 1911.)

Judges BOYCE and WOOLLEY sitting.

*Francis H. Hoffecker* and *C. W. Cullen* for plaintiffs. ·

*Andrew J. Lynch* and *Robert G. Houston* for defendant.

Superior Court, Sussex County, April Term, 1911.

SCI FA SUR MORTGAGE (No. 25, June Term, 1910).

After giving evidence to prove the execution of the mortgage and the non-payment of the debt secured by it, the plaintiffs rested. Counsel for defendant moved for a nonsuit on the following grounds:

*First.* That it had not been shown by the plaintiffs that James H. Tyre was a member of the Mutual Loan Association.

*Second.* That the action was brought when the plaintiffs had no legal status in this court; the second extension of time in which they could bring suit, granted by the Chancellor, having expired on the twenty-second day of June, 1910, and the third extension of time was not granted until the thirteenth day of July, 1910, and in the interim between those two times the suit was brought.

WOOLLEY, J.:—It seems to us that your motion is for a nonsuit on the ground that the plaintiffs have not proved what may be a matter of defense. We cannot grant the motion on that ground.

On the second point the court is satisfied that under the pleas filed in this case, viz.: payment, release, accord and satisfaction—this motion cannot prevail. If your contention is sound in point of law, it could only be reached by plea in abatement going to the right of the party to bring suit.

Therefore we decline the motion for a nonsuit.

As proof of the payment of the mortgage debt, the defendant offered in evidence a large number of checks, each being for a sum that aggregated the amount of monthly dues and monthly interest due from himself to the plaintiff association. This tender raised squarely the question of the right of the defendant to have the payment of his dues on stock applied to the credit of and in liquidation of the debt secured by his mortgage.

The question was argued at length upon briefs, and held under advisement from April fourteenth to April eighteenth, when the court delivered the following opinion.

WOOLLEY, J., delivering the opinion of the court:

From the evidence and admission of the plaintiff it appears that the Mutual Loan Association and the Workingmen's Loan Association were corporations of the State of Delaware; that the mortgage sued upon was executed by the defendant and his wife on the nineteenth day of November, 1886, to the Workingmen's Loan Association, to secure the payment of the sum of $1,000, "at any time within three months from the date thereof" together with lawful interest thereon, payable monthly, and also the sum of $1, likewise payable monthly, "as and for the monthly install-ment on each and every of five shares of the capital stock of the said corporation, transferred for money" thereby secured.     It further appears that on the twenty-ninth of September, 1892, the mortgage was assigned to the Mutual Loan Association, the plain-tiff, for the recited consideration of $1,000, with which associa-tion the Workingmen's Loan Association became merged or asso-ciated; that before the assignment of the mortgage the defendant and his wife made monthly payments to the Workingmen's Loan Association of $10 for interest and dues, as provided in the mort-gage, and after the assignment and until the eighteenth of October, 1898, they made like monthly payments to the Mutual Loan Asso-ciation, in each case making remittances to George R. Maris, who was the secretary of each association; that on the twenty-second day of June, 1902, the Mutual Loan Association became insolvent and was dissolved.   The plaintiff admits that the obli-gation of the mortgage respecting the payment of interest and dues was fulfilled to the two associations until the eighteenth day of October, 1898, and that the defendant, while originally a sub-scriber for five shares of the stock of the Workingmen's Loan Association, was by the merger or relation of the two associations entitled to the benefits of a like number of shares in the Mutual Loan Association, upon the maturity of which, if the association had continued, the obligation of the mortgagor would have been

canceled. The plaintiff claims that the dissolution of the Mutual Loan Association, because of its insolvency, made the principal debt secured by the mortgage at once due and payable, and that there is now due thereon the principal sum of $1,000, with lawful interest thereon from the eighteenth of October, 1898, the date of the last interest payment, to the twenty-second day of June, 1902, the date of the dissolution of the association.

The defendant states that he is prepared to show that he bid a very considerable premium for the money loaned him by the association and which is embraced within the principal debt of $1,000 recited in the mortgage, and offers to show, by a tender of checks in evidence, that on account of the loan transaction he has made 144 payments of $10 each, which, after deducting a fine, aggregate $1,438.10, and that he has therefore paid and discharged the entire principal and interest due upon the mortgage.

It is shown by the mortgage, as well as by the admission of the defendant, that of each monthly payment of ten dollars, five dollars was paid as interest upon the debt secured by the mortgage and five dollars as dues upon five shares of stock of the association, owned by one of the mortgagors and assigned to the association as collateral.

The tender of the checks as evidence of payment by the defendant of the obligation of the mortgage suggests two questions: First, the status of a borrowing stockholder of a loan association when the association is dissolved before its stock is matured; and, second, the right of a borrowing stockholder, in such a situation, to have his obligation to the association credited with the dues paid by him on his shares of stock.

[3] Building and loan associations are corporations that deal in money. They are distinguished from other corporations that deal in money chiefly in the theory of their financial operations; and the theory of their financial operations, in its original conception, differs chiefly from that of other money corporations in that the full payment upon the subscription to the capital stock is completed at the end instead of the beginning of their business. Stockholders in a building and loan association, however, bear the same relation to their corporation and enter into contracts

of subscription of the same force and obligation as do stockholders in other corporations.

[4, 5]  When a stockholder borrows money from the association of which he is a member, his contract of stock subscription is not altered and his position as stockholder is not changed, except as his right to receive the profits upon his stock is transferred to the association to secure the payment of the money borrowed.  He assumes not a changed but another relation to the association, and becomes a debtor as well as a stockholder.  He therefore has dual relations with the association, because he has made two contracts, one to pay dues upon his stock and the other to pay interest on his loan.  The undertaking of the association to him is to so invest the dues and interest it receives, in common with those received from others, that his stock eventually will become fully paid, and when fully paid will be applied in cancellation of his debt for the money borrowed.  This is the consideration that induces the stock subscription.  The solvency of the association is essential to its performance, and its insolvency defeats its performance and puts an end to the operations of the association.  It likewise ends the contract of the stockholder in so far as he is relieved of the further payment of dues, and determines contracts for money borrowed, and nothing remains but to wind up the association in such a manner as to do equity to its creditors, its debtors and its stockholders.

[6]  What constitutes an equitable adjustment of the assets and liabilities of an insolvent building and loan association, when the relative rights of stockholders of different classes are considered, or the conflicting claims of borrowing and nonborrowing stockholders are to be determined, as in this case, has been the subject of much dispute and some difference of opinion.  There appear to be three views upon the subject.  The first is that the relation between the association and a borrowing shareholder, who has given his obligation for an amount equal to the sum borrowed and the premium bid, is changed by the circumstance of insolvency to the relation subsisting between an ordinary creditor and debtor, and that the borrowing shareholder is to be charged with the amount actually received by him, with interest at the

legal rate and credited with all payments made, whether by way of dues, interest or premium, according to the rule of partial payments. The second view is that the borrowing shareholder is entitled to credit upon his loan for the amount of interest and premium paid by him, but is not entitled to have the amount of the dues paid by him on account of stock credited upon the loan. The third view differs from the second in that, instead of crediting the borrowing shareholder with the whole premium, it credits him only with the part estimated as unearned. The authorities all agree that the borrower should be charged with the amount loaned him, with interest at the rate fixed by law (6 *Cyc.* 155, 156), and the authorities, by a clear weight, reject the enforcement of any part of the premium, the principal and remaining point in dispute being the application of dues paid on stock to the discharge of an obligation for money borrowed.

Upon this question we have a decision in our own state which we think rules this case. In the matter of the *Mechanics' Loan Association*, heard by Chancellor Nicholson in 1904, upon the report of T. Bayard Heisel, master, it was decided that, in case of the insolvency of a loan association, dues paid upon stock should not be credited upon the obligation for money borrowed, following the law as declared by Mr. Justice Paxon in *Strohen v. Franklin Savings and Loan Association*, 115 *Pa.* 273, 278, 8 *Atl.* 843, and in the later case of *Coltrane v. Blake*, 113 *Fed.* 785, 51 *C. C. A.* 457.

[7, 8] From these cases, as from others cited by counsel in their very thorough and helpful argument, it appears that the relative rights of borrowing and nonborrowing shareholders in the adjustment of the affairs of an insolvent loan association depend largely upon their status in relation to the association. It further appears that their status is determined by the character of their contract or contracts. One who enters into the contract of a shareholder retains the status of a shareholder whether he thereafter becomes a borrower or not, and if he becomes a borrower his character as shareholder is not blended with that of borrower, but remains separate and distinct, although his stock may be assigned to the association as collateral for the loan.

Primarily, the mortgage given for a loan pledges the property thereby secured for the payment of the dues upon the stock as well as the debt created by the loan, while stock is issued upon a contract of subscription that is silent as to an obligation for money borrowed, and has no relation to such an obligation except as it may thereafter be assigned as collateral to secure its payment. In subscribing for stock in a loan association, each stockholder partakes of the adventure with the hope of profit, and each takes the same hazard and risks the same money in seeking that profit, whether he be a nonborrowing stockholder who first pays his dues and then gets his profits, or a borrowing stockholder who by a loan first takes his profits and then pays his dues with the hope that upon the maturity of his stock his obligation will be returned to him canceled.

[9, 10] Equality of opportunity carries equality of responsibility, and if loss instead of profit comes, it is difficult to see why a nonborrowing stockholder should yield a part of his property to reimburse his equally unfortunate fellow stockholder who happened to be a debtor to the association for money borrowed from it. The stock status of each being the same, it is therefore held by the weight of authority, that payments on stock are not *ipso facto* payments on a mortgage debt and that dues paid on stock do not *ipso facto* work a *pro tanto* extinguishment of the mortgage (*Link v. G. B. Ass'n*, 89 *Pa.* 15), even when assigned as collateral (*Economy B. Ass'n v. Hungerbushler*, 93 *Pa.* 258), for it is a general doctrine of the law that payments on account of collaterals are not payments on account of the debt they secure (*Lord v. Ocean Bank*, 20 *Pa.* 386, 59 *Am. Dec.* 728).

[11, 12] As preferences without equities should be given to neither class of stockholders, the borrowing stockholder should not yield for the benefit of his nonborrowing fellow, the advantage of the premium he bid for his loan, when by the dissolution of the association his stock can not mature to cancel it. True it is, the premium that was bid to obtain the loan in this case, was bid to the Workingmen's Loan Association and is included in the real debt of $1,000 recited in the mortgage, but the Mutual Loan Association took the assignment of the mortgage after the date of pay-

ment, stated in the mortgage to be three months after date, and taking it after maturity, it took it subject to its equities. At all events the Mutual Loan Association in accepting the assignment of the mortgage, assumed by merger the stock undertaking of the Workingmen's Loan Association, and failing in that undertaking is in no better position than if the default had been that of the Workingmen's Loan Association in the first instance. Upon its insolvency and default, it cannot claim payment of the premium.

The court will admit testimony of the amount of premium paid by the defendant in securing the loan represented by the mortgage, and will admit in evidence the checks offered by the defendant with the qualification that they be offered and received so as to show only the money paid by the defendant as interest on the mortgage and not as dues on the stock. This testimony is admitted in support of the rule laid down in the case of the *Mechanics' Loan Association, supra*, and which in principle will be applied in this case, namely, that the plaintiff association being insolvent and dissolved, the amount due from the defendant as an advanced or borrowing stockholder is to be ascertained by charging him with the actual amount received by him from the Workingmen's Loan Association, with interest thereon at the rate of six per centum per annum from the nineteenth day of November, 1886, being the date of the loan, to the twenty-second day of June, 1902, being the date of the dissolution of the Mutual Loan Association; and by crediting him with all sums paid by him as interest, on the mortgage, according to the rule of partial payments, and by crediting him with such other sum or sums, if any, that he may have paid solely on account of the loan or advance, excluding all dues, fines or other payments made on account of stock.

(The defendant rested and the plaintiffs moved for binding instructions.)

WOOLLEY, J., charging the jury:

Gentlemen of the jury:—There is in this case neither controversy nor dispute as to the facts, the questions and issues involved having resolved themselves into questions and issues of law which

the court has already passed upon in rendering an opinion upon the evidence. It, therefore, becomes our duty to instruct you to bring in a verdict for the plaintiffs.

[13] In ascertaining the amount of your verdict, we will state that the mortgage was given on November 19, 1886, that although it was given for one thousand dollars, the defendant can be charged only with the amount which he received, which was nine hundred and twenty-five dollars and sixty-five cents. Of that amount he received from the association the sum of four hundred and eighty-three dollars and eighty-five cents on December 3, 1886, and the sum of four hundred and forty-one dollars and eighty cents on March 23, 1887, aggregating the sum of nine hundred and twenty-five dollars. The defendant should be charged with that aggregate sum, with interest on the two amounts from the dates upon which they were respectively received until the date of the dissolution of the Mutual Loan Association on June 22, 1902.

Having ascertained that total, the defendant is to be credited with one hundred and forty-four payments of five dollars each, beginning on the nineteenth of December, 1886, calculated upon the principle of partial payments, and whatever balance you find should be returned by you as the amount of your verdict.

Verdict for plaintiffs.