McGEE et ux. v. KIRBY.

No. 30221.    Oct. 14, 1941.

*118 P. 2d 199.*

C. H. Baskin, of Holdenville, for plaintiffs in error.

W. W. Pryor, Hugh M. Sandlin, Marvin Balch, and Don Wilbanks, all of Holdenville, for defendant in error.

HURST, J. This is an action by the plaintiff, W. E. Kirby, against the defendants, X. X. McGee and his wife, Lillie McGee, to recover the balance due on a note executed by the defendants to the Wetumka Building & Loan Association and to foreclose a real property mortgage executed as security to the note. From a judgment for the plaintiff, defendants appeal.

On December 15, 1926, defendants borrowed $5,000 from the association. They executed their promissory note for $5,000, payable to said association, wherein they agreed to pay $66.66 each and every month, $25 of which as dues on 50 shares of the capital stock of said association until each of said shares should reach the par value of $100, and $41.66 as interest on the loan. As security to the note the defendants assigned to the association the 50 shares of its capital stock and executed a mortgage covering certain real property involved in this action. The indebtedness was to be discharged by the cancellation of said stock at its maturity.

Defendants ceased paying on the stock in 1929. In 1930 the association entered into voluntary liquidation, and on November 5, 1934, the district court of Hughes county decreed that said association was dissolved. F. R. Phelps, secretary of the liquidating committee, testified that he canceled defendants' 50 shares of stock in the association, that part was canceled in 1935 and the remainder on January 1, 1936; that he acted on instructions in a letter from the Banking Department and did not conduct a sale and gave no notice thereof. The note and mortgage were assigned by the association to F. R. Phelps, who in turn assigned them to W. E. Kirby. The present action was brought on January 28, 1938. Plaintiff pleaded a breach of the note in that said defendants have not made any payments thereon for more than seven years, except a payment of $491.95 on January 1, 1936 (which was the value of the stock on its cancellation), and a failure to keep the premises insured as set out in the mortgage. Defendants pleaded the statute of limitations.

Defendants contend: (1) That when the building and loan association became insolvent, ceased to do business, and began liquidation in 1930, the unmatured installments of the note matured and were due and payable so as to start the statute of limitations to running, and that since then the statute has run on the note; (2) that their interest in the 50 shares of capital stock of the association was not foreclosed in the manner provided by law; (3) that

the payment of the insurance premiums and the application of the stock on the indebtedness by cancellation of the stock did not extend the limitation of time for the bringing of a suit thereon; and (4) that the note and mortgage were nonnegotiable.

1. The contention of the defendants that the statute of limitations began to run when the association became insolvent is not well taken. It is a well-settled rule of law that "whenever a person is prevented from exercising his legal remedy by some paramount authority, the time during which he is thus prevented is not to be counted against him in determining whether the statute of limitations has barred his right." Johnson v. Johnson, 182 Okla. 293, 77 P. 2d 745. See, also, 34 Am. Jur. 194; 17 R. C. L. 870-875; 37 C. J. 1039 and 1047. Sections 9851 and 9866 (as amended by chapter 54, S. L. 1933), O. S. 1931, 18 O. S. A. §§ 320 and 360, provide that the liquidation of building and loan associations shall be under the supervision and control of the Bank Commissioner, that the Bank Commissioner shall maintain suits for collection of all outstanding obligations due such association, which suits shall be brought in the name of the State of Oklahoma on the relation of the Bank Commissioner, and that the assets are in custodia legis. It follows that while the Bank Commissioner has control of the association the officers and stockholders can do nothing to enforce the obligations owing to the association because of the paramount authority and control of the Bank Commissioner. This court has consistently held that the statute of limitations does not run while the assets of a state bank are in the possession of the Bank Commissioner. Richison v. State, 176 Okla. 537, 56 P. 2d 840; State v. Ware, 82 Okla. 130, 198 P. 859; State v. Smith, 77 Okla. 277, 188 P. 96. See, also, 122 A. L. R. 945, for the many Oklahoma authorities annotated therein. The same rule as to suspending the statute of limitations while the assets are in possession of the Bank Commissioner should apply equally to building and loan associations. It follows that the running of the statute of limitations was suspended during the time the association was in the hands of the Bank Commissioner, and the action was not barred.

2. Defendants' second contention is that their 50 shares of stock of said association were not foreclosed in the manner provided by law, citing sections 11708, 11711, 11717, and 11272, O. S. 1931, 55 O. S. A. §§ 16, 19, 25, and 46 O. S. A. §52. The cited sections pertain to pledges and chattel mortgages and are not applicable to the case at bar. In Kelly v. Garfield County Bldg. & L. Ass'n, 180 Okla. 253, 68 P. 2d 811, this court held that:

"The building and loan mortgage procedure and provisions governing same is entirely different from the ordinary commercial mortgage, in this state, at least. The failure to observe this distinction has led to a confusion that ought not to exist; the result of that confusion has been the attempt to apply the general rule applicable to ordinary mortgage loans to the association form of loan. The two are not commenced or completed in a similarity of manner. Their sole similarity is the fact that a note and a real estate mortgage are executed. The method of repayment is by no means the same."

The pledging of the 50 shares was not a true pledge to which the general pledge statutes would be applicable, but was a method of repayment, as a member does not pay on his loan by monthly installments, but pays on the stock purchased and hypothecated, and when the stock is matured the loan is canceled. In the absence of special statutes in Oklahoma as to the appropriation of hypothecated building and loan stock by the association toward extinguishment of the debt in default, the general common law on building and loan associations, and not our general statutes on pledges and chattel mortgages which defendants rely upon, should be applied. In case of default, the association holding stock under an assignment as collateral security, may elect to treat the payments on the stock as

payments upon the loan, i. e., appropriate or apply the stock to the extinguishment pro tanto of the debt in default. Spring Garden Ass'n v. Tradesmen's Loan Ass'n, 46 Pa. 493; Wadlinger v. Washington German B. & L. Ass'n, 153 Pa. 622, 26 Atl. 647; Endlich, Bldg. Ass'ns (2d Ed.) 458; Sundheim, B. & L. Ass'ns (3rd Ed.) 131; Thornton & Blackledge, B. & L. Ass'n, 170.

3. The contention of the defendants that the payment of the insurance premiums and the application of the stock on the indebtedness by cancellation of the stock did not extend the limitation of time for bringing a suit thereon is of no avail, as the statute of limitations did not run while the Bank Commissioner had control of the association during liquidation.

4. The final contention of the defendants is that the note and mortgage were nonnegotiable. It is true that a solvent and operating building and loan association cannot sell, assign, or transfer the note and mortgage of a borrowing stockholder while there is no default therein and the mutual original obligation to stockholder and association continues. V. S. Cook Lbr. Co. v. Harris, 180 Okla. 557, 71 P. 2d 446, 112 A. L. R. 450. But that rule of law has no application here, as the association was insolvent and had ceased to operate, and the mutuality of obligations between stockholder and association was dissolved at the time this note and mortgage were assigned. The insolvency of a building and loan association works a rescission of its contracts and obligations, and the debts of its members immediately become due and collectible regardless of the time of payment specified in their contracts, and the purpose of the association is abandoned and nothing remains to be done except to wind it up and make distribution. Curtis v. Granite State Provident Ass'n, 69 Conn. 6, 36 Atl. 1023, 61 Am. St. Rep. 17; Mutual Loan Ass'n v. Tyre, 26 Del. 88, 81 Atl. 48; Thompson, B. & L. Ass'n (2d Ed.) 337, 410, 607, and 649; Sundheim, B. & L. Ass'n (3rd Ed.) 204-205; 9 Am. Jur. 117 and 184; 4 R. C. L. 384-388; 9 C. J.

989; 12 C. J. S. 520 and 530. Here the note and mortgage were assigned to the principal stockholder, Phelps, on distribution of assets under the supervision of the Bank Commissioner, which was all there was left to do after the association had become insolvent.

Affirmed.

WELCH, C. J., CORN, V. C. J., and DAVISON and ARNOLD, JJ., concur. RILEY, OSBORN, BAYLESS, and GIBSON, JJ., absent.