MCBEE v. SHANAHAN HOME DESIGN



 

 
 
 
 
 
 Skip to Main Content
 Accessibility Statement
 
 
 
 
 
 Help
 Contact Us
 
 
 
 
 e-payments
 Careers
 
 
 
 
 
 
 
 
 
 
 
 Home
 Courts
 Decisions
 Programs
 News
 Legal Research
 Court Records
 Quick Links
 
 
 
 
 
 OSCN Found Document:MCBEE v. SHANAHAN HOME DESIGN

 

 
 



 
 
 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only
 
 
 

 
 MCBEE v. SHANAHAN HOME DESIGN
2021 OK 60
Case Number: 119181 Comp w/119190; 119337
Decided: 11/16/2021
THE SUPREME COURT OF THE STATE OF OKLAHOMA
Cite as: 2021 OK 60, __ P.3d __

 
NOTICE: THIS OPINION HAS NOT BEEN RELEASED FOR PUBLICATION. UNTIL RELEASED, IT IS SUBJECT TO REVISION OR WITHDRAWAL. 

 

 

VICKIE MCBEE, AN INDIVIDUAL, PLAINTIFF/APPELLANT,
V.
SHANAHAN HOME DESIGN, LLC, AN OKLAHOMA LIMITED LIABILITY COMPANY AND BIGGS BACKHOE, INC., AN OKLAHOMA CORPORATION AND JOHN DOES 1--5, TRUE NAMES UNKNOWN, DEFENDANTS/APPELLEES.

ON APPEAL FROM THE DISTRICT COURT OF CANADIAN COUNTY
HONORABLE JACK MCCURDY II, TRIAL JUDGE 

¶0 Counsel failed to promptly issue summons in a lawsuit against two defendants relating to the construction of plaintiff's home. During the pendency of plaintiff's case, the Oklahoma Supreme Court issued emergency administrative orders recommending closure of courthouse facilities and suspending certain deadlines as a result of the Covid-19 viral outbreak. Plaintiff served the defendants more than 180 days after filing her suit. The trial court dismissed plaintiff's case for failure to comply with 12 O.S.Supp.2017, § 2004(I), which requires service of process within 180 days of filing a petition. We now reverse and conclude the trial judge erroneously sustained the motion to dismiss based on untimely service. This Court's emergency orders acted to suspend or toll the period under § 2004(I); therefore, plaintiff timely accomplished service of process when the period between March 16, 2020, and May 15, 2020, is excluded from computing the deadline.

JUDGMENT OF THE DISTRICT COURT REVERSED;
CAUSE REMANDED FOR FURTHER PROCEEDINGS
CONSISTENT WITH THIS OPINION

C. Craig Cole, John E. Gatliff II, C. Craig Cole & Associates, Oklahoma City, Oklahoma, for Plaintiff/Appellant, Vickie McBee.

Jeremy K. Ward, James C. Asbill, Franden Farris Quillin Goodnight + Roberts, Tulsa, Oklahoma, for Defendant/Appellee, Biggs Backhoe, Inc.

Jacquelyn L. Dill, The Dill Law Firm, P.C., Oklahoma City, Oklahoma, for Plaintiff/Appellee, Shanahan Home Design, LLC.

GURICH, J.

Facts and Procedural History

Introduction

¶1 The news of the spread of Covid-19 infections in the United States created a time of extreme uncertainty and confusion. On the evening of March 11, 2020, the Oklahoma City Thunder and the Utah Jazz were about to "tip-off" an NBA basketball game in Chesapeake Arena, when the first active case of Covid-19 was discovered in Oklahoma.[1] Panic, fear, and anger were the immediate responses after the public learned Covid-19 was in Oklahoma. These were unprecedented times.

¶2 The day following the cancellation of the Thunder-Jazz game, Governor Stitt issued two Executive Orders which, inter alia: (1) directed state agencies to take necessary steps to protect against Covid-19, including placing limits on public access to state facilities; and (2) declared an emergency in all seventy-seven counties because of the impending threat of Covid-19.[2] On April 2, 2020, Governor Stitt issued Executive Order 2020-12[3] in which the Governor invoked his constitutional and statutory power pursuant to the Catastrophic Health Emergency Powers Act, 63 O.S.2011, §§ 6101-6900, to declare a catastrophic health emergency as defined in § 6104.[4] Members of the public were directed to shelter in place; social gatherings of more than ten persons were prohibited; elective and non-emergency medical/dental procedures were directed to be postponed; and non-essential businesses were ordered to be closed to the public.[5] Oklahoma state offices were closed, federal courts and offices were closed, and schools operated in a remote fashion. On the heels of the Governor's actions, the Oklahoma Supreme Court, joined by the Oklahoma Court of Criminal Appeals, issued three successive, emergency orders, which concerned district-court procedure during the Covid-19 outbreak and suspended certain deadlines in legal matters.[6] These orders represented a sensible response to the unprecedented crisis. Through the orders, the Court carried out its constitutional duty to safeguard judicial employees, the general public, and principles of justice. The issue presented in this appeal is whether these joint emergency orders suspended the time limit for effecting service of process set forth in 12 O.S.Supp.2017, § 2004(I).

¶3 The first joint emergency order (SCAD Order No. 2020-24), which was issued on March 16, 2020, states in relevant part:

Subject to constitutional limitations, all deadlines and procedures whether prescribed by statute, rule or order in any civil, juvenile or criminal case shall be suspended by 30 days from the date of this order. This suspension also applies to appellate rules and procedures for the Supreme Court, the Court of Criminal Appeals, and the Court of Civil Appeals.[7]

The Supreme Court issued a second joint emergency order (SCAD Order No. 2020-29) on March 27, 2020. SCAD Order No. 2020-29 continued the suspension of deadlines through May 15, 2020, recommended that all seventy-seven district courthouses be closed to the public as per local order, directed that jury trials be cancelled and directed judges and clerks to use email, fax and/or drop-boxes for filing written materials.[8] On April 29, 2020, the Supreme Court entered a third joint emergency order (SCAD Order No. 2020-36), continuing the suspension of all civil and criminal deadlines and clarifying the prior SCAD orders:

5. In all cases, the period from March 16, 2020 to May 15, 2020, during which all rules and procedures, and deadlines, whether prescribed by statute, rule or order in any civil, juvenile or criminal case were suspended, will be treated as a tolling period. May 16th shall be the first day counted in determining the remaining time to act. The entire time permitted by statute, rule or procedure is not renewed.

6. Beginning on May 16, 2020, all rules and procedures, and all deadlines whether prescribed by statute, rule or order in any civil, juvenile, or criminal case, shall be enforced, including all appellate rules and procedures for the Supreme Court, the Court of Criminal Appeals, and the Court of Civil Appeals. 

7. For all cases pending before March 16, 2020, the deadlines are extended for only the amount of days remaining to complete the action. For example, if the rule required the filing of an appellate brief within 20 days, and as of March 16, ten (10) days remained to file the brief, then the party has 10 days with May 16, 2020 being the first day.[9]

As set forth in the second and third SCAD orders, all civil time limits resumed on May 16, 2020.

McBee v. Shanahan Home Design, LLC, Case No. CJ-2019-711

¶4 On November 19, 2019, Appellant Vickie McBee ("McBee") filed separate lawsuits against multiple parties involved in the design and construction of her personal residence.[10] McBee filed her suit against Shanahan Home Design, LLC ("Shanahan Home") and Biggs Backhoe, Inc. ("Biggs Backhoe") in Canadian County Case No. CJ-2019-711. McBee's counsel did not immediately have summonses issued for service on the defendants.

¶5 On May 18, 2020, the Canadian County court clerk's office issued summonses for both Biggs Backhoe and Shanahan Home.[11] McBee served Biggs Backhoe on July 8, 2020, and Shanahan Home on July 16, 2020. Service was accomplished by certified mail, return receipt requested, delivery restricted to the addressee. Shanahan Home and Biggs Backhoe each filed special appearances, reserving additional time to answer McBee's petition.[12]

¶6 Each defendant filed motions to dismiss McBee's lawsuit. Biggs Backhoe's motion raised several arguments, including that McBee failed to serve her petition and summons within 180 days, and therefore should be deemed dismissed as of May 19, 2020. Shanahan Home also raised several arguments, but noted that it would defer to the trial court's judgment on whether the Covid-19 related administrative orders affected the time limit in § 2004(I). In response, McBee maintained that the joint SCAD orders suspended the period for service of process, and therefore dismissal was improper.

¶7 On October 7, 2020, the trial court issued and filed an order sustaining the motion to dismiss. The trial judge concluded, "because the Summons had not been issued prior to the Covid-19 issues that were addressed by the Supreme Court Directives (SCAD 2020-24; SCAD 2020-29; SCAD 2020-36), the directives do not apply."[13] The trial judge further held that the 180-day period for service of summons was not stayed by the joint emergency orders.[14]

¶8 McBee filed her appeal from the trial-court ruling on November 5, 2020, and we retained the matter. Having reviewed the briefs and record on appeal, we now reverse and find the trial court erred in sustaining the defendants' motions to dismiss based on plaintiff's alleged failure to serve her petition and summons within 180 days.

Standard of Review

¶9 This matter presents a unique legal issue for appellate review--whether the trial court properly interpreted this Court's administrative orders suspending deadlines due to the Covid-19 outbreak in Oklahoma. Such an enquiry involves a question of law. Issues of construction pose a legal query, which we review using a de novo standard. Christian v. Christian, 2018 OK 91, ¶ 6, 434 P.3d 941, 942. In exercising de novo review, "this court possesses plenary, independent, and non-deferential authority to examine the issues presented." Benedetti v. Cimarex Energy Co., 2018 OK 21, ¶ 5, 415 P.3d 43, 45.

Analysis

¶10 Appellant McBee raises five assignments of error in her brief-in-chief; however, because we conclude the trial court erred by failing to suspend the time limitation to complete service of process, there is no need to address the remaining issues.

¶11 Although problems began to arise in 2019, it was not until the beginning of 2020, that the United States faced an extraordinary national emergency caused by the Covid-19 pandemic. As a result, federal, state, and local governments took unprecedented action to combat the viral outbreak. Courts across the country issued administrative orders in an effort to prevent the spread of Covid-19.[15] Many of these orders included directives suspending deadlines and time limitations. The dispositive questions in this case are (1) whether the Supreme Court possesses express powers to suspend statutory deadlines during an unprecedented world-wide pandemic; and (2) whether the joint emergency SCAD orders entered in March and April 2020 postponed the 180-day period in § 2004(I) for accomplishing service of process on Shanahan and Biggs Backhoe.

¶12 We begin our analysis with the Oklahoma Constitution to ascertain what powers are bestowed upon this Court. Article 7 "provides for a unified system of judicial management under the authority of the Supreme Court." Petuskey v. Cannon, 1987 OK 74, ¶ 10, 742 P.2d 1117, 1120. Indeed, Section 4 of Article 7 establishes that "[t]he original jurisdiction of the Supreme Court shall extend to a general superintending control over all inferior courts and all Agencies, Commissions and Boards created by law." Okla. Const. art. VII, § 4. In addition, the Oklahoma Constitution vests the Supreme Court with primary administrative authority over all lower courts in the state. Further, the Oklahoma Constitution provides:

Except with reference to the Senate sitting as a Court of Impeachment and the Court on the Judiciary, general administrative authority over all courts in this State, including the temporary assignment of any judge to a court other than that for which he was selected, is hereby vested in the Supreme Court and shall be exercised by the Chief Justice in accordance with its rules. The Supreme Court shall appoint an administrative director and staff, who shall serve at its pleasure to assist the Chief Justice in his administrative duties and to assist the Court on the Judiciary.[16]

To facilitate the successful performance of this duty to act as administrator over the entire judiciary, the Oklahoma Legislature saw fit to entrust the Court with the power to promulgate rules. 20 O.S. 2011 § 24; 12 O.S. 2011 § 74.

¶13 In January 1969, this Court adopted the Rules on Administration of the Courts, 20 O.S. 2011, ch. 1, app. 2. These rules assign the Chief Justice of the Oklahoma Supreme Court with paramount charge over the state court infrastructure and the operation of each district, which includes the ability to issue orders necessary to carry out this management responsibility. Rule 2 reads in relevant part:

(D) The Chief Justice is authorized to issue such orders and directives as are necessary to exercise administrative and supervisory control over all district court personnel. . . .

* * * *

(E) The Chief Justice is authorized to issue such directives and orders as are necessary to manage the assignment, duties, and performance of district court personnel; to establish work schedules and other personnel policies applicable to district court personnel; to suspend, furlough or terminate individual district court personnel; and to make such other administrative directives as the Chief Justice deems appropriate for effective and efficient management of the district courts.[17]

 

We further noted in Petuskey:

 

These references to administration of courts make it clear the judiciary has exclusive authority to manage its own affairs. The purpose of a unitary system of judicial management is to centralize the administrative power of the entire judicial system in the Supreme Court, and make the Chief Justice the administrative head of all courts.

Petuskey, ¶ 15, 742 P.2d at 1120 (citation omitted). Under the State Constitution and Rule 2, it is unquestionable that the Supreme Court, acting through the Chief Justice, had authority to take proper measures and issue such orders as were deemed necessary for the safe operation of state courthouses and its employees.

¶14 In furtherance of its duty to oversee the state judiciary, this Court responded to the Covid-19 state of emergency by issuing the aforementioned SCAD orders. This first SCAD order declared that it was published "to clarify the procedures to be followed in all Oklahoma district courts and to encourage social distancing and to avoid risks to judges, court clerks, court employees and the public."[18] In addition, the emergency order cancelled upcoming jury terms; released prospective jurors from service; urged the rescheduling of non-jury trials, hearings, and pre-trial conferences; placed limitations on persons entering judicial facilities; and authorized district courts to impose more stringent limitations when necessary. The second and third joint emergency orders urged additional protective action, such as conducting hearings remotely when feasible. Moreover, since the virus impacted Oklahoma jurisdictions at different times, with varying ferocity, the orders promoted consistent application of the law and ensured uniformity.

¶15 The tolling of time limitations was just one in a litany of safety measures implemented by the emergency orders to better protect courthouse employees and the public from further spread of Covid-19. The restrictions and directives prescribed by the Supreme Court in the March/April SCAD orders were analogous to orders closing state judicial facilities due to inclement weather or some other catastrophic event. Like ice, snow and severe weather, the conditions caused by Covid-19 drastically limited access to courthouses across the state and affected litigants' ability to meet required deadlines. Cf. 12 O.S.2011, § 2006(A) (extending deadlines which fall on a holiday or other day when a courthouse is closed or closes early). Beginning March 16, 2020, and continuing through May 15, 2020, courthouses across the State of Oklahoma were closed to the general public, with the exception of emergency matters. By limiting access to courthouses and by tolling time limits during the Covid-19 outbreak, this Court facilitated the overarching goal of protecting society as a whole from the pandemic. The orders were entered as part of the administrative role bestowed on this Court via the Oklahoma Constitution, and were only executed in furtherance of these administrative duties. The constitutionally authorized orders were temporary in nature and corresponded directly to the time frame in which the Governor required government offices, businesses, and churches to remain closed to the public.

12 O.S. Supp.2017, § 2004(I) as applied to McBee's case.

¶16 Plaintiff filed the underlying lawsuit in November 2019, thus, the applicable version of § 2004 was the 2017 enactment. Title 12 O.S. Supp.2017, § 2004(I) reads:

SUMMONS: TIME LIMIT FOR SERVICE. If service of process is not made upon a defendant within one hundred eighty (180) days after the filing of the petition and the plaintiff has not shown good cause why such service was not made within that period, the action shall be deemed dismissed as to that defendant without prejudice. The action shall not be dismissed if a summons was served on the defendant within one hundred eighty (180) days after the filing of the petition and a court later holds that the summons or its service was invalid. After a court quashes a summons or its service, a new summons may be served on the defendant within a time specified by the judge. If the new summons is not served within the specified time, the action shall be deemed to have been dismissed without prejudice as to that defendant. This subsection shall not apply with respect to a defendant who has been outside of this state for one hundred eighty (180) days following the filing of the petition.

¶17 Our decisions have recognized that service is always punctual if accomplished within 180 days, regardless of when a summons is issued. Cornett v. Carr, 2013 OK 30, ¶ 8, 302 P.3d 769, 772-73; Fischer v. Baptist Health Care of Okla., 2000 OK 91, ¶ 6, 14 P.3d 1292, 1293. In Carr, we found the time limit in § 2004(I) was "an outer limit not subject to reduction." Id. ¶ 12, 302 P.3d at 773. Nothing in the statute required McBee to issue summons by a date certain, so long as service was accomplished within the outer boundary set by § 2004(I). Thus, it was erroneous for the trial judge to disregard this Court's order suspending the 180-day time limit merely because the plaintiff had not issued summonses prior to the emergency SCAD orders.[19]

 

¶18 The third joint emergency order outlined an explanation for calculating the time limits:

 

5. Paragraphs 4 and 5 of the Second Emergency Joint Order remain in effect to May 15, 2020. In all cases, the period from March 16, 2020 to May 15, 2020, during which all rules and procedures, and deadlines, whether prescribed by statute, rule or order in any civil, juvenile or criminal case were suspended, will be treated as a tolling period. May 16th shall be the first day counted in determining the remaining time to act. The entire time permitted by statute, rule or procedure is not renewed.

* * * *

For all cases pending before March 16, 2020, the deadlines are extended for only the amount of days remaining to complete the action. For example, if the rule required the filing of an appellate brief within 20 days, and as of March 16, ten (10) days remained to file the brief, then the party has 10 days with May 16, 2020 being the first day.[20]

Under the terms of the third SCAD order, all deadlines between March 16, 2020, and May 15, 2020, were treated as being tolled due to the emergency health crisis. "'Tolling' is a term of art which refers to the temporary suspension of statutory time bar for bringing a suit because of either some 'disability' on the part of the plaintiff which prevents that person from commencing the action or some activity on the part of the defendant forestalling prosecution of the claim against the defendant." Thompson v. Anchor Glass Container Corp., 2003 OK 39, ¶ 9 n. 13, 73 P.3d 836, 838. The concept of tolling is not a new one. Importantly, the suspension period was crafted to conform to long-standing law dealing with situations where actors are prevented from performing statutorily imposed duties. "It is a well-settled rule of law that 'whenever a person is prevented from exercising his legal remedy by some paramount authority, the time during which he is thus prevented is not to be counted against him in determining whether the statute of limitations has barred his right." McGee v. Kirby, 1941 OK 326, ¶ 5, 118 P.2d 199, 200 (quoting Johnson v. Johnson, 1938 OK 194, ¶ 8, 182 Okla. 293, 77 P.2d 745, 747. This rule typically applies to statutes of limitations, which is comparable to the deadline in § 2004 for issuing summons; both require that a party perform some conduct within a specific time frame. In the present case, there are a number of factors that constitute disability on the part of the plaintiff, including, but not limited to, the fact that society was in the midst of a global pandemic. Most courthouses were closed to the public because of Covid-19. Additionally, the third SCAD order expressly stated that the statute of limitations in any civil case would be extended. Consequently, McBee's potential reliance on this Court's orders clearly stating that the statute of limitations on all civil cases pending would toll further establishes a disability for purposes of tolling.

CONCLUSION

¶19 From November 19, 2019, to March 15, 2020, a total of 117 days had expired, leaving McBee with 63 days to complete service under § 2004(I). When statutory deadlines resumed on May 16, 2020, McBee had until Saturday July 18, 2020 to complete service on the defendants. McBee served Biggs Backhoe on July 8, 2020, and Shanahan on July 16, 2020; therefore, both were served with the petition and summons in a timely manner, and it was error for the trial court to grant the defendants' joint motion to dismiss based on a failure to serve within 180 days. Accordingly, we reverse and remand this case for additional proceedings in the trial court.

JUDGMENT OF THE DISTRICT COURT REVERSED;
CAUSE REMANDED FOR FURTHER PROCEEDINGS
CONSISTENT WITH THIS OPINION

CONCUR: DARBY, C.J., KANE, V.C.J., KAUGER, WINCHESTER, EDMONDSON, GURICH, ROWE, AND KUEHN, JJ.;

NOT PARTICIPATING: COMBS, J.

FOOTNOTES

[1] March 11, 2020, is when the World Health Organization characterized Covid-19 as a pandemic. It's when Dr. Anthony Fauci addressed lawmakers in Washington, D.C., and warned against gathering in large crowds. It's when Utah Jazz center Rudy Gobert tested positive for the novel coronavirus in Oklahoma City, and an NBA game became the symbol of a shutdown in sports and life beyond. https://www.oklahoman.com/story/sports/nba/thunder/2021/03/11/thunder-jazz-march-11-covid-nba-postponed-game-shutdown-coronavirus-rudy-gobert-utah-oklahoma-city/6930268002/

[2] Governor J. Kevin Stitt, Exec. Order No. 2020-06 (Mar. 12, 2020), available from https://www.sos.ok.gov/documents/executive/1912.pdf; Exec. Order No. 2020-07 (Mar. 15, 2020), available from https://www.sos.ok.gov/documents/executive/1913.pdf. The President of the United States also declared a national emergency. Proclamation No. 9994, 85 Fed. Reg. 15,337 (Mar. 13, 2020).

[3] Governor J. Kevin Stitt, Exec. Order No. 2020-12 (April 2, 2020), available from https://www.sos.ok.gov/documents/executive/1927.pdf. The medical emergency remained in place until it was terminated by the Oklahoma Legislature effective May 30, 2020. The Governor's Executive Order was unique in that it invoked powers under the never-before-used CHEPA. Those powers include allowing the governor to temporarily "[s]uspend the provisions of any regulatory statute prescribing procedures for conducting state business, or the orders and rules of any state agency," that interfere with the state's ability to respond to any catastrophic health emergency. 63 O.S.2011, § 6403(D).

[4] Title 63 O.S.2011, § 6104(2) reads:

2. "Catastrophic health emergency" means an occurrence of imminent threat of an illness or health condition that:

a. is believed to be caused by any of the following:

(1) a nuclear attack,

(2) bioterrorism,

(3) a chemical attack, or

(4) the appearance of a novel or previously controlled or eradicated infectious agent or biological toxin, and

b. poses a high probability of any of the following harms:

(1) a large number of deaths in the affected population,

(2) a large number of serious or long-term disabilities in the affected population, or

(3) widespread exposure to an infectious or toxic agent that poses a significant risk of substantial future harm to a large number of people in the affected population;

[5] Governor J. Kevin Stitt, Exec. Order No. 2020-13 (April 8, 2020), available from https://www.sos.ok.gov/documents/executive/1929.pdf.

[6] Many district courts across Oklahoma followed suit by issuing their own directives. See e.g. Bryan Cnty. Dist. Ct., AO-2020-14 (Mar. 25, 2020); Cleveland Cnty. Dist. Ct., Order AO-2020-1 (Mar. 23, 2020); Hughes Cnty. Dist. Ct., AO-2020-1 (Apr. 1, 2020); Sixteenth Jud. Dist., AO-2020-1 (Mar. 30, 2020); Tulsa Cnty. Dist. Ct., AO-2020-4 (Mar. 19, 2020). The District Court of Canadian County issued AO-2020-4, filed May 11, 2020, which was posted on OSCN as part of the Covid-19 emergency notice procedures utilized by the Supreme Court. AO-2020-4 restated a portion of SCAD No. 2020-36: "As per SCAD No. 2020-36, beginning on May 16, 2020, all rules and procedures and all deadlines whether prescribed by statute, rule or order in any civil, juvenile or criminal case, shall be enforced."

[7] First Emergency Joint Order Regarding the Covid-19 State of Disaster, SCAD 2020-24 (Okla. 2020), 2020 OK 25, ¶ 3, 462 P.3d 704, 704-05.

[8] Second Emergency Joint Order Regarding the Covid-19 State of Disaster, SCAD No. 2020-29 (Okla. 2020), 2020 OK 24, ¶¶ 6-7, 462 P.3d 262, 262.

[9] Third Emergency Joint Order Regarding the Covid-19 State of Disaster, SCAD No. 2020-36 (Okla. 2020), 2020 OK 23, ¶¶ 5, 6, 7, 462 P.3d 703, 703 (emphasis added).

[10] An earlier lawsuit was filed in Oklahoma County, McBee v. Forth, Case No. CJ-2017-4515, against many of the same defendants. After the trial court sustained motions to compel arbitration filed by three of the defendants, McBee initiated an interlocutory appeal in Case No. 116,833. This appeal was dismissed for lack of an appealable order on April 23, 2018. McBee then filed a second appeal, urging this Court to grant certiorari review of a certified interlocutory order. This Court denied certiorari on October 22, 2018. McBee voluntarily dismissed her claims against the remaining defendants without prejudice on November 19, 2018. McBee's subsequent lawsuits were refiled in accordance with the Oklahoma savings statute codified at 12 O.S.2011, § 100.

[11] Canadian County District Court Order AO-2020-4 filed May 11, 2020, further stated that "the Canadian County Courthouse and Courts shall begin a gradual reopening to the public on May 18, 2020 and will resume dockets in a limited and structured way."

[12] The special appearances, citing Young v. Walton, 1991 OK 20, 807 P.2d 248, requested additional time to answer without waiving any affirmative defenses. When Young was decided in 1991, 12 O.S.Supp.1984, § 2012(A) provided a defendant could file "an appearance" and reserve additional time. Id. ¶ 4, n.3, 807 P.2d at 249. The majority in Young distinguished between a "general appearance," which waives certain affirmative defenses, and a "special appearance," which would not constitute a waiver. In 2002, the Oklahoma Legislature amended § 2012(A) to replace "an appearance" and "appearance" with "a reservation of time." Thus, the distinction between a special or general appearance would now appear inconsequential, and ostensibly, any reservation of time "waives the defenses of paragraphs 2, 3, 4, 5, 6, and 9 of subsection B of [§ 2012]." Plaintiff McBee never raised this issue, so we will not consider it in this proceeding.

[13] Order on Defendants' Shanahan Home Design, LLC and Biggs Backhoe, Inc. Motions to Dismiss, R.O.A. at 117-18.

[14] Because the trial court did not rule on the other issues raised in the defendants' motions to dismiss, we will not address these issues on appeal.

[15] In re Admin. Rule 17 Emergency Relief for Ind. Trial Courts Relating to the 2019 Novel Coronavirus (COVID-19), 141 N.E.3d 389 (Ind. 2020); In re Tolling of Time Requirements Imposed by Rules Promulgated by the Supreme Court & Use of Tech., 141 N.E.3d 974 (Table) (Ohio 2020); Order Imposing Statewide Judiciary Restricted Operations Due to Covid-19 Emergency, Admin. Order 2020-PR-16 (Kan. Mar. 18, 2020), available from https://www.kscourts.org/KSCourts/media/KsCourts/Orders/2020-PR-016.pdf; In Re: Order Declaring a Judicial Emergency in Response to Covid-19 Emergency, (Va. 2020), available from https://www.vacourts.gov/news/items/covid/2020_0317_supreme_court_of_virginia.pdf. On April 1, 2020, the Supreme Court of Texas clarified the extension of the statute of limitations by proclaiming: "Any deadline for the filing or service of any civil case is tolled from March 13, 2020, until June 1, 2020, unless extended by the Chief Justice of the Supreme Court. This does not include deadlines for perfecting appeal or for other appellate proceedings, requests for relief from which should be directed to the court involved and should be generously granted." Eighth Emergency Order Regarding the Covid-19 State of Disaster, Misc. Docket No. 20-9051, 597 S.W.3d 844 (Mem.).

[16] Okla. Const. art. VII, § 6 (emphasis added).

[17] R. for Dist. Cts. of Okla., 2(d)-(e), 20 O.S. 2011, ch. 1, app. 2.

[18] SCAD Order No. 2020-24 (Okla. 2020), supra note 7.

[19] In Bd. of Cnty. Comm'rs of Tulsa Cnty. v. Hon. Daman Cantrell, Case No. 119,272, our court found that the emergency SCAD orders suspended the Oklahoma Governmental Tort Claim Act's 180-day time limit in 51 O.S.2011, § 157(B).

[20] SCAD Order No. 2020-36 (Okla. 2020), supra note 9.

 

 

 

 

 

 

 

 





 Citationizer© Summary of Documents Citing This Document
 
 
 
 Cite
 Name
 Level
 
 
 
 None Found.
 
 
 Citationizer: Table of Authority
 
 
 
 Cite
 Name
 Level
 
 
 
 Oklahoma Supreme Court Cases
 Cite
Name
Level

 1987 OK 74, 742 P.2d 1117, 58 OBJ 2238, Petuskey v. Cannon
Discussed
 1941 OK 326, 118 P.2d 199, 189 Okla. 488, MCGEE v. KIRBY
Discussed
 1991 OK 20, 807 P.2d 248, 62 OBJ 807, Young v. Walton
Discussed
 1938 OK 194, 77 P.2d 745, 182 Okla. 293, JOHNSON v. JOHNSON
Discussed at Length
 2000 OK 91, 14 P.3d 1292, 71 OBJ 3015, FISCHER v. BAPTIST HEALTH CARE OF OKLAHOMA
Discussed
 2003 OK 39, 73 P.3d 836, THOMPSON v. ANCHOR GLASS CONTAINER CORP.
Discussed
 2013 OK 30, 302 P.3d 769, CORNETT v. CARR
Discussed
 2018 OK 21, 415 P.3d 43, BENEDETTI v. CIMAREX ENERGY COMPANY
Discussed
 2018 OK 91, 434 P.3d 941, CHRISTIAN v. CHRISTIAN
Discussed
 2020 OK 23, 462 P.3d 703, THIRD EMERGENCY JOINT ORDER REGARDING THE COVID-19 STATE OF DISASTER
Discussed
 2020 OK 24, 462 P.3d 262, SECOND EMERGENCY JOINT ORDER REGARDING THE COVID-19 STATE OF DISASTER
Discussed
 2020 OK 25, 462 P.3d 704, FIRST EMERGENCY JOINT ORDER REGARDING THE COVID-19 STATE OF DISASTER
Discussed
Title 12. Civil Procedure
 Cite
Name
Level

 12 O.S. 74, Meeting of Justices to Revise General Rules
Cited
 12 O.S. 100, Limitation of New Action after Reversal or Failure Otherwise than on Merits
Cited
 12 O.S. 2004, Process
Discussed at Length
 12 O.S. 2006, Time
Cited
 12 O.S. 2012, Defenses and Objections - When and How Presented - By Pleading or Motion
Cited
Title 20. Courts
 Cite
Name
Level

 20 O.S. 24, Rule-making Authority Not Limited
Cited
Title 51. Officers
 Cite
Name
Level

 51 O.S. 157, Notice of Approval or Denial of Claim
Cited
Title 63. Public Health and Safety
 Cite
Name
Level

 63 O.S. 6104, Definitions
Cited
 63 O.S. 6403, Declaration of Catastrophic Health Emergency - Governor's Authority
Cited


 
 








 
 
 
 

 
 




 
 
 
 oscn
 
 EMAIL: webmaster@oscn.net
 Oklahoma Judicial Center
 2100 N Lincoln Blvd.
 Oklahoma City, OK 73105
 
 
 courts
 
 Supreme Court of Oklahoma
 Court of Criminal Appeals 
 Court of Civil Appeals
 District Courts
 
 
 
 decisions
 
 New Decisions
 Supreme Court of Oklahoma
 Court of Criminal Appeals
 Court of Civil Appeals
 
 
 
 programs
 
 The Sovereignty Symposium
 
 Alternative Dispute Resolution
 Early Settlement Mediation
 Children's Court Improvement Program (CIP)
 Judicial Nominating Commission
 Certified Courtroom Interpreters
 Certified Shorthand Reporters
 Accessibility ADA
 
 
 
 
 
 
 
 
 Contact Us
 Careers
 Accessibility ADA